Feldman v. City of Morrison.

## JACOB FELDMAN

### v.

## THE CITY OF MORRISON.

1. DRAM SHOP LAW—SALE OF LIQUORS WITHOUT LICENSE.—The dram shop law prohibits the sale without license of certain specified liquors and an expression of these must, under a familiar rule, be held to be an exclusion of all others not enumerated, hence no license can be required for the sale of fluids not included among those for the sale of which a license is necessary.

2. SALE OF CIDER—PROOF OF INTOXICATING QUALITIES.—The object of the Legislature in declaring that spirituous, vinous and malt liquors, were intoxicating, was to render it unnecessary to prove it on the trial. Cider not being a fluid belonging to either of the classes mentioned, is not intoxicating by legislative enactment, and in a prosecution for selling cider as an intoxicating liquor, proof should be made that such fluid is intoxicating.

3. PROOF.—Although Courts have said that jurors might, from their own knowledge alone, determine that whiskey, brandy and other liquors, which are always intoxicating, were so, this should not be so as to that which might, or might not be an intoxicating fluid when sold.

APPEAL from the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

Mr. O. F. WOODRUFF, for appellant; that under the ordinance in question, the facts established do not warrant a

finding for the plaintiff, cited Kettering v. City of Jackson-
ville, 50 Ill. 39 ; Caswell v. The State, 2 Humph. 402 ; The
State v. Moor, 5 Blackf. 118 ; South Evanston v. Mares, 1
Chicago Law Jour. 58 ; Rev. Stat. 1874, 224.

Mr. F. D. RAMSAY, for appellee; contending that cider is
intoxicating, cited United States Dispensatory, 84,

That it was not incumbent upon the city to prove that it is
intoxicating: Kettering v. City of Jacksonville, 50 Ill. 39.

LELAND, P. J. The city of Morrison, by an ordinance,
approved by the Mayor, April 29, 1874, ordained and adopted,
substantially, Sections 1 and 2 of Chapter 43 of the Revised
Statutes of 1874, on the subject of dram-shops, except, that
all the words after the words " twenty dollars," are omitted.
Otherwise it is, in substance, like the statute, and it should
receive the same construction.

A suit was commenced in the name of the city against
appellant before a justice of the peace. The summons was in
the usual form enacted in Sec. 17 of Chap. 79, for Justices.
On the trial, the defendant was found guilty as charged, and
there was judgment that the city have and recover of defendant
fifty dollars and costs.

The case was appealed to the Circuit Court, where there was
a trial before the Court without a jury. The Court found the
issues for the plaintiff, whereupon it was ordered that said de-
fendant be and he hereby is fined the sum of twenty dollars,
and that he pay the same to plaintiff, with all the costs in this
proceeding.

The action was one brought by the city against the defend-
ant for selling, in June, 1877, the juice of apples, expressed the
preceding October, and denominated cider. The only evidence
in the cause is the stipulation of the parties which is, in sub-
stance, as follows: .

That the ordinance was duly passed, setting it out, that the
defendant sold cider by the glass in June, 1877, to be drank on
the premises where sold; that it was drank there and in the
city and paid for at five cents the glass; that the said cider

was made in the month of October preceding, and the natural fermentation allowed to take place between the making and the sale; and that defendant kept a baker's shop and restaurant, and not a dram shop; and this was all the evidence.

It will be perceived that there was no evidence of any witness that the fluid was intoxicating liquor, and the point most strongly urged by appellant is, that the judge who tried the cause below could not, if it was not intoxicating by enactment, determine that it was, by applying his own general knowledge of cider and its effects upon mankind, or his special knowledge of its effect upon himself. If this fluid be either a spirituous, vinous or malt liquor, then the Legislature has enacted that the cider mentioned is intoxicating liquor, and it is so by legislative enactment, if in no other way. The counsel for the appellee insists earnestly that it is intoxicating *per se,* and also by legislation as a "vinous" liquor. He does not seriously insist that cider could properly be termed a "spirituous" liquor, and we certainly have no knowledge of having heard it so denominated. It is not produced by distilling : Walker v. Prescott, 44 N. H. 511; Caswell et al. v. State, 2 Humph. 412; The State v. Moon, 5 Blackf. 118. It surely cannot be called malt liquor.

In determining whether cider is a vinous liquor, we must take a common-sense view of what the Legislature meant by the use of the word "vinous." If we could apply our judicial knowledge to the subject so far as to perceive who were legislators when the act was passed, and how many of them had apples to gather and cider to make and sell, we would suppose that they did not mean to include cider in the act, as a fluid for the sale of which there should be a license. But let us endeavor fairly to ascertain what the word "vinous" does mean.

Without endeavoring to trace it any further back, we may say that it is derived from the Latin *vinum,* wine, and so named because made from the fruit of the vine. Wine is defined in Worcester's Dictionary, after the statement of its derivation, and after reference to the word in the language of many nations, and among others to the Latin *vinum,* as meaning first the fermented juice of the grape. Second, the fermented

juice of certain fruits resembling in many respects the wine obtained from grapes, but distinguished therefrom by naming the source whence it is derived, as ginger wine, gooseberry wine, currant wine, etc.   Nothing is said about apple wine or pear wine, unless they are included in the, etc.

It is also said in this dictionary "that some chemists apply the term wine to any saccharine solution, the sugar of which has been wholly or partially changed into alcohol.

If the city ordinance, or the statute might include among the "vinous" fluids those which come from the juice of fruits which grow on vines and bushes, and are named wine, we do not think it should be construed so liberally as to apply the term *vinous* to the juice of fruits which grow on trees.   And in common parlance, cider and beer are never called vinous liquors or wine, although there may be found in works on chemistry, general expressions that "wine is the expressed juice of ripe fruits containing sugar, which causes it to readily undergo fermentation," as stated in appellee's brief.   Appellee's counsel has certainly made a very scientific and thorough examination of the subject, and we have read his brief with much interest, but we still think that cider is not wine, and that it is not intoxicating liquor by legislative enactment, as "vinous."

If it has not been enacted to be such, then we think it should have been proved upon the trial to have been intoxicating, and that as there was no testimony to that effect, the finding was not supported by the evidence.

It is evident that the object of the legislation that spirituous, vinous and malt liquors were intoxicating, was to render it unnecessary to prove it on the trial.   Where the statute simply imposes a penalty for selling intoxicating liquor, without naming any kind as such, cider should, we think, be proved to be intoxicating.   If cider had been named in the statute, or ordinance, and its sale prohibited under penalties, then the case of Kettering v. City of Jacksonville, 50 Ill. 39, would be in point for appellee.   See also Cone v. Dean, 14 Gray, 99, as to cider, when named in the act.

It was therefore a question of fact whether cider of the kind sold was intoxicating liquor, to be determined by the jury, or

by the Court acting as a jury. Suppose that cider of a certain age may have enough of alcohol in it to produce intoxication, if the quantity taken is large enough, still it might be that no amount of the kind sold in this case could be taken large enough to produce such effect. Cider, for some period of time after the juice is pressed from the apple, has no intoxicating principle in it at all, and if a jury could say that it was in-intoxicating liquor in June without evidence, could they also say just what time between October and June it became so? When did acquitting days end and convicting days begin?

We do not think the fact whether the cider in this case was intoxicating when sold was one to be ascertained by jurors by applying their own knowledge only. Though courts have taken judicial notice, and have said that jurors might, from their own knowledge alone, determine that whiskey, brandy, and other liquors which are always intoxicating were so, this should not be so as to that which might or might not be an intoxicating fluid when sold, but only to that kind which is always so and known to everybody to be so.

We have not deemed it necessary to refer to any adjudged cases on the subject, as none were cited in the brief of appellant or appellee.

In our judgment, however, cider is not within the spirit, or more accurately speaking, not within the liquor of the act. It could not have been intended that a farmer who desired to sell cider on the farm in quantities less than a gallon, or who may have desired to take a barrel of it to a fair to be retailed by the glass, should first obtain a license to keep a dram shop, nor should the giving a glass to a minor on the farm violate Sec. 6. Nor do we consider that the act was intended to include persons situated as the defendant is, who sell cider and not any spirituous, vinous or malt liquors.

A dram shop is defined as a place where spirituous, vinous or malt liquors are retailed by less quantity than one gallon, and intoxicating liquors shall be deemed to include all such liquors within the meaning of this act. Under the maxim that the expression of one is the exclusion of another, the fluids not included among those for the sale of which a license is necessary,

Feldman v. City of Morrison.

should be excluded and no license as to them be required.    The license-under Sec. 4 would, of course, be one to sell spirituous, vinous or malt liquors.    To sell without license that which should be licensed, would be an offense.    To sell that without license for selling which a license need not be obtained, would not be an offense.

It being made necessary only to obtain a license to keep a shop where spirituous, vinous and malt liquors are sold, it cannot be necessary to have a license to keep a place wherein fluids which are not spirituous, vinous or malt liquors may be sold.    Intoxicating liquors, therefore, mentioned in the second section is that fluid for which it is necessary to have a dram shop license.    As there are so many fluids in which alcohol is contained, either in an infinitesimal or slight quantity, and as alcohol when used as drink is intoxicating either in a perceptible or an imperceptible degree, the Legislature deemed it proper to draw a line somewhere, and though there may be no good reason why very old cider and lager beer should not be on the same side of it, it was drawn in our judgment, between those fluids which were spirituous, vinous and malt liquors on the one side, and those which do not come within that definition on the other, though they may contain some alcohol, the idea being to prohibit the sale, without a license of those fluids, the drinking of which produces a substantial, perceptible intoxication by the use of them, and these were defined as aforesaid. Of course if there were a fraudulent admixture of spirituous, vinous or malt liquor with the cider, the sale of such a mixture without a license would be unlawful.

As there is no case made against the defendant according to the facts as stipulated, the judgment is reversed.

Reversed.